## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## SHERMAN DIVISION

| | | |
|---|---|---|
| **TARYN ALYSSA CAMPBELL** | § | |
| | § | |
| **v.** | § | **NO. 4:23-CV-00349-BD** |
| | § | |
| **CAROLYN COLVIN,** | § | |
| ***Acting Commissioner, Social Security*** | § | |
| ***Administration*** | § | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Taryn Campbell seeks judicial review under 42 U.S.C. § 405(g) of a final decision of the United States Social Security Administration Commissioner denying her claim for disability-insurance benefits. In accordance with 28 U.S.C. § 636(c), both parties consented to a United States magistrate judge conducting all proceedings in this court. Having reviewed the transcript of the administrative hearing, the parties' briefs to this court, and the relevant evidence in the administrative record, the court will affirm the Commissioner's decision.

### I. BACKGROUND

A "younger person" in Social Security parlance, 20 C.F.R. § 404.1563(c), Campbell applied for disability-insurance benefits based on her claim that her posttraumatic stress disorder ("PTSD"), major depressive disorder, and bipolar disorder qualified as severe impairments within the meaning of 20 C.F.R. § 404.1520(a)(4)(ii). The Commissioner denied her application and request for reconsideration.

At a subsequent hearing before an administrative law judge ("ALJ"), Campbell testified that she developed, and was hospitalized for, PTSD in the spring of 2021. She stated that she experienced "flashbacks, dissociation, increased startle response, hypervigilance, paranoia, avoidance of spaces and triggers, and nightmares" that caused her to wake up vomiting. She also stated that it would be very difficult for her to recover from such an episode the next day.

Through her counsel, Campbell argued that "there are times when she does well" but stated that "then she slips down into periods of decompensation and is back to having severe flashbacks and traumatic nightmares and difficulties functioning in her normal activities of daily living." She testified to her belief that she would not be able to work five days a week at even an easy job, such as assembling boxes, because she generally has two "bad days" in any given week and cannot predict which days those will be. She supported her contentions by reference to two letters that she asked her therapist, Irene Avina, to write.

The first letter described, in a single paragraph, Campbell's condition, treatment, and progress in treatment. Administrative Record ("AR") 345 (Feb. 14, 2022). It asserted that Campbell "continues to experience intense to moderate psychological distress and physiological reactivity at exposure to internal or external cues that symbolize or resemble an aspect of the traumatic event, which in turn, impedes on [Campbell]'s ability to maintain concentration, persistence or pace in a work environment." *Id.* The letter concluded that Campbell "is currently unable to resume any type of gainful employment due to mental impairments caused by the recurrent and intrusive distressing recollections of the traumatic event and the psychological distress and physiological reactivity at exposure to internal or external cues that trigger an aspect of the traumatic event." *Id.*

The second, longer letter again described Campbell's reported symptoms. AR 615–16 (Sept. 22, 2022). It referenced the Commissioner's medical listings, asserting that Campbell meets listing 12.15 (20 C.F.R. Pt. 404, Subpt. P, App'x 1, § 12.15) and the A and B criteria associated with it, providing the following opinion:

> [Campbell] meets the criteria of 12.15 (A) in the following way: [She] has been exposed on multiple occasions throughout her life to sexual violence. As stated above, [she] reports involuntarily reexperiencing trauma through intrusive thoughts, flashbacks, and nightmares. [She] frequently avoids any person, places or objects that are associated to the traumatic events. Due to this avoidance, [she] does not leave home without her friend or partner accompanying her. Furthermore, [she] experiences sleep disturbance, feelings of guilt and worthlessness, difficulty concentrating and feeling very paranoid.
>
> Additionally, [Campbell] meets the criteria of 12.15 (B) in the following way: [She] struggles with social anxiety and paranoia. This prevents [her] from initiating and

sustaining conversations with those around her, handling conflict with others and responding to criticism. Due to the frequency of [her] flashbacks and innocuous triggers, [Campbell] is unable to complete tasks needed in a timely manner, often having to stop what she is doing to tend to her dysregulation. Currently, [she] can complete functional tasks without disruption (such as cleaning, feeding herself, daily hygiene, making phone calls) up to 1-3 times a week. Based on where [she] is currently functioning, she would not be able to maintain regular attendance at work or work a full day without needing more allotted rest periods.

R.616.

Based on Avina's two letters, Campbell argued to the ALJ that she met listing 12.15 and that the Commissioner could not carry his burden at step five of the required analysis to show that her impairment does not prevent her from consistently working full-time. *See infra* Part II (explaining the five-step analysis). She sought a favorable decision on that basis.

Vocational expert Shelly Eike testified at the hearing that a hypothetical person similar to Campbell could perform jobs in the national and local economies. But when the hypothetical person was changed to someone who would miss work approximately four times per month, Eike testified that the person would not be able to sustain employment at any level.

After the hearing, the ALJ concluded that Campbell was not disabled within the meaning of the Social Security Act and was therefore not entitled to benefits. His decision, AR 26–34, found that Campbell met several requirements, including establishing severe impairments that significantly limited her ability to perform basic work activities. But it went on to find that Campbell: (1) did "not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1"; (2) "has the residual functional capacity to perform a full range of work at all exertional levels" with certain non-exertional limitations; and (3) could perform "jobs that exist in significant numbers in the national economy." *See* 20 C.F.R. § 404.1545(a) (defining "residual functional capacity" and explaining its assessment and use); *id.* § 404.1546(c) (reflecting that it is the ALJ's responsibility to determine a claimant's residual functional capacity at a disability hearing); SSR 96-8p (Social Security policy guidance regarding assessment of residual functional capacity).

In reaching that conclusion, the ALJ stated that he "considered the medical opinion(s) and prior administrative medical finding(s) in accordance with the requirements of 20 CFR 404.1520c." He found that "[t]he record shows the claimant has a degree of limitation in her mental functioning, but not to the extent alleged."

The Administration's appeals council denied review of the ALJ's decision. Campbell timely sought judicial review.

## II.  RELEVANT LAW AND STANDARD OF REVIEW

Among other things, the Social Security Act governs disability insurance and supplemental security income benefits. *See id.* §§ 423, 1381. To be entitled to either, a claimant must have a "disability," a term principally defined in this context as an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); *accord id.* § 1382c(a)(3)(A).

At a hearing before an ALJ, a claimant generally bears "the burden of proving she has a medically determinable physical or mental impairment lasting at least twelve months that prevents her from engaging in substantial gainful activity." *Newton v. Apfel*, 209 F.3d 448, 452 (5th Cir. 2000). Following a five-step process, the ALJ generally must determine whether: "(1) the claimant is not working in substantial gainful activity; (2) the claimant has a severe impairment; (3) the claimant's impairment meets or equals a listed impairment in Appendix 1 of the Regulations; (4) the impairment prevents the claimant from doing past relevant work; and (5) the impairment prevents the claimant from doing any other work." *Id.* at 453 (citing 20 C.F.R. § 404.1520). *But see* 20 C.F.R. § 404.1520(h) (providing an "[e]xpedited process" under which an ALJ may permissibly bypass step four in certain circumstances). The burden shifts to the Commissioner only at the fifth step of the analysis. *See Newton*, 209 F.3d at 453.

Under 42 U.S.C. § 405(g), a court's review of an ALJ's decision is "highly deferential." *Perez v. Barnhart*, 415 F.3d 457, 464 (5th Cir. 2005). The court's role is limited to "ascertain[ing]

4

whether (1) the final decision is supported by substantial evidence and (2) . . . the Commissioner used the proper legal standards to evaluate the evidence." *Newton*, 209 F.3d at 452.

"Substantial evidence" is a term of art. *Biestek v. Berryhill*, 587 U.S. 97, 102 (2019). It means more than a scintilla but less than a preponderance. *Boyd v. Apfel*, 239 F.3d 698, 704 (5th Cir. 2001). That is a low bar. "A finding of no substantial evidence is appropriate only if no credible evidentiary choices or medical findings support the decision." *Id.* And although a court "must carefully scrutinize the record to determine if, in fact, [substantial] evidence is present," *Hollis v. Bowen*, 837 F.2d 1378, 1383 (5th Cir. 1988), it "may not re-weigh the evidence or substitute [its] judgment for that of the Commissioner," *Harris v. Apfel*, 209 F.3d 413, 417 (5th Cir. 2000); *see Richardson v. Perales*, 402 U.S. 389, 401 (1971) (explaining that "substantial evidence" "means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)).

It is the ALJ's job, not the court's, to resolve any evidentiary conflict. *Carry v. Heckler*, 750 F.2d 479, 482 (5th Cir. 1985). For that reason, "a reviewing court must affirm the Commissioner, even when the court disagrees with the Commissioner's decision, so long as it is supported by some evidence that any reasonable factfinder might accept." *Washington v. Barnhart*, 413 F. Supp. 2d 784, 791 (E.D. Tex. 2006); *see Carey v. Apfel*, 230 F.3d 131, 135 (5th Cir. 2000).

### III.  THE PARTIES' ARGUMENTS

Campbell's brief to this court raises one narrow issue: whether the ALJ's determination of residual functional capacity is unsupported by substantial evidence and is the product of legal error because the ALJ failed to properly evaluate the opinion evidence in accordance with the applicable "new" regulations. Campbell Br. 1. (Codified in 20 C.F.R. § 404.1520c, what Campbell refers to as the "new" regulations were issued in 2017, several years before she filed her claim.)

Campbell focuses her argument for remand on subsections (a) and (b)(1) of § 404.1520c— which, in relevant part, required the ALJ to "articulate how [he] considered the medical opinions" and "how persuasive [he found] all of the medical opinions." Citing, among other authorities, *King v. Commissioner of Social Security*, No. 9:21-CV-85-MAC, 2023 WL 2657642, at *6 (E.D. Tex. Mar.

9, 2023), *report and recommendation adopted*, No. 9:21-CV-85, 2023 WL 2652236 (E.D. Tex. Mar. 24, 2023), and *Bjorklund v. Kijakazi*, No. 4:21-CV-01810, 2022 WL 2392315, at *4 (S.D. Tex. July 1, 2022), *report and recommendation adopted sub nom. Bjorklund v. Saul*, No. 4:21-CV-01810, 2022 WL 2905471 (S.D. Tex. July 22, 2022), she argues that the ALJ did not sufficiently credit statements in the two letters from Avina.

In particular, Campbell faults the ALJ for rejecting Avina's letters as "'inconsistent with the record,'" calling that "exactly the sort of ambiguous reference to the record that is not permitted" under § 404.1520c. She argues that "an unbiased review of the record reveals ample support for the limitations assessed by . . . [Avina]," citing evidence of her diagnosis shortly after her alleged onset date, her psychiatric hospitalization later that month, and the results of a mental-health consult several weeks later.

In support of her argument for harmful error, *see Shinseki v. Sanders*, 556 U.S. 396, 407–08 (2009) (citing 28 U.S.C. § 2111); *Jones v. Astrue*, 691 F.3d 730, 734 (5th Cir. 2012); *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988), Campbell cites the vocational expert's testimony that a person who would miss four days of work in a given month would not be able to hold a job. She also relies on SSR 85-15, a Social Security program policy statement instructing that "even favorable age, education, or work experience will not offset" a substantial loss of ability to meet "[t]he basic mental demands of competitive, remunerative, unskilled work," which "include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting."

For her part, the Acting Commissioner argues that the ALJ's review of the record was sufficient under the applicable regulations. She asserts that the ALJ was correct in concluding that Avina is not an acceptable medical source under 20 C.F.R. § 404.1502 but that he appropriately considered her opinion, explained why it was not dispositive, and properly relied on other parts of the record to determine that Campbell's account of the intensity, persistence, and limiting effects

of her symptoms did not fully align with the evidence, such that his decision should be affirmed under the substantial-evidence standard.

## IV. ANALYSIS

Under the applicable regulations, an ALJ "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s), including those from [a claimant's] medical sources." 20 C.F.R. § 404.1520c(a); *see Webster v. Kijakazi*, 19 F.4th 715, 718–19 (5th Cir. 2021) (comparing § 404.1520c with its predecessor and citing a Social Security Administration final rule for its explanation that the current regulations allow courts to "focus on the content of the evidence rather than on the source" (cleaned up)). The regulations instead require the ALJ to "articulate . . . how persuasive [he or she] find[s] all of the medical opinions and all of the prior administrative medical findings in [a claimant's] case record." 20 C.F.R. § 404.1520c(b).

When evaluating whether a medical provider's opinion is persuasive, the ALJ must consider five factors: (1) supportability; (2) consistency; (3) the provider's relationship with the claimant; (4) specialization; and (5) other factors that tend to support or contradict the provider's opinion. *Id.* § 404.1520c(c). The first two are "the most important factors"; the regulations state that the ALJ "will explain" how he or she considered them. *Id.* § 404.1520c(b)(2). The ALJ need not explain how he or she considered the three remaining factors. *Id.*; *Hepburn v. O'Malley*, No. 6:24-CV-540-SJH, 2024 WL 4647948, at *5 (M.D. Fla. Nov. 1, 2024).

The regulations describe the primary factors this way:

(1) Supportability. The more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be.

(2) Consistency. The more consistent a medical opinion(s) or prior administrative medical finding(s) is with the evidence from other medical sources and nonmedical sources in the

claim, the more persuasive the medical opinion(s) or prior administrative medical finding(s) will be.

20 C.F.R. § 404.1520c(c)(1)–(2).

The regulatory text does not impose a "magic words" requirement. *Keel v. Saul*, 986 F.3d 551, 556 (5th Cir. 2021). That is to say, "there are no formalistic rules governing how an ALJ must articulate his decision." *Hubbard v. Comm'r of Soc. Sec.*, No. 4:20-CV-00588-BP, 2022 WL 196297, at *4 (N.D. Tex. Jan. 21, 2022). Remand is appropriate only if there is no indication that the ALJ applied the correct standard. *Keel*, 986 F.3d at 556. "[T]erse" findings may suffice. *Miller v. Comm'r of Soc. Sec.*, No. 120-CV-00194-HSO-RPM, 2022 WL 566175, at *6 (S.D. Miss. Feb. 24, 2022).

In *King*, the court found that the ALJ's analysis did not meet the specificity threshold of § 404.1520c because the ALJ's reference to supporting evidence was ambiguous, precluding meaningful appellate review, and because the treatment notes that the ALJ relied on did not document normal mental functioning. 2023 WL 2657642, at *6. Similarly, in *Bjorklund*, the court found that § 404.1520c was not satisfied by an ALJ's rejection of a nurse practitioner's opinion in a single paragraph that just summarized the nurse's opinions before declaring them "not persuasive because some (unspecified) aspects of those opinions are inconsistent with the entire record." 2022 WL 2392315, at *4. And in *William T. v. Commissioner of Social Security*, the court found the ALJ's explanation insufficient because it "failed to discuss, cite, or even mention" a contrary medical opinion. No. 6:18-cv-0055-BU, 2020 WL 6946517, at *7 (N.D. Tex. Nov. 25, 2020).

None of those flaws is present here.

To begin, Campbell's assertion that the ALJ made only an "ambiguous reference" to the record is inaccurate. In his analysis, the ALJ cited several pages of the record confirming that, after her hospitalization in 2021, Campbell "continued to report mental symptoms such as depression, bipolar disorder, PTSD, psychosis, delusions, anxiety, panic attacks with vomiting, flashbacks, crying spells, sleep disturbance, anhedonia, social avoidance especially in public places, and

agoraphobia." AR 31. But he also cited multiple pages of the record reflecting "normal objective findings of behavior, speech, and grooming at [Campbell's] appointments," AR 31, noting that Avina's letters failed to acknowledge those findings, AR 32.

The cited pages of the record provide sufficient evidentiary support, under the forgiving standard of review, for the ALJ's decision. The cited treatment notes reflect, for instance, that although Campbell appeared nervous at some of her appointments, she was consistently well groomed, exhibited normal speech and mood, was cooperative, and had a linear, logical, and goal-directed thought process—even at times when it was "difficult" or had been "terrible" for her. According to the forms on which they appear, those are all "[o]bjective note[s]." AR 328, 387, 389, 392, 395,  544,  582, 585, 587.

Under the applicable regulations, that accurate designation is significant. As already noted, the "supportability" factor directs an ALJ assessing the persuasiveness of a medical provider's opinion to "the objective medical evidence and supporting explanations." 20 C.F.R. § 404.1520c(c)(1). The ALJ did what the regulations require on this score, explaining the significance of those objective findings. Like the ALJ whose decision was affirmed in *Breaux v. Commissioner of Social Security*, he "considered the objective medical evidence as well as Plaintiff's own statements and articulated specific and adequate reasons for finding Plaintiff's subjective complaints not entirely consistent with the evidence." No. 6:21-CV-695-RBD-EJK, 2023 WL 1802146, at *6 (M.D. Fla. Jan. 23, 2023), *report and recommendation adopted*, No. 6:21-CV-695-RBD-EJK, 2023 WL 1796529 (M.D. Fla. Feb. 7, 2023).

The second of the two "most important" factors for assessing persuasiveness is, again, "consistency," *id.* § 404.1520c(b)(2)—that is, whether a medical opinion that the ALJ finds material is consistent with "the evidence from other medical sources and nonmedical sources," *id.* § 404.1520c(c)(2). On that factor, the ALJ referenced parts of the record indicating that Campbell "enjoys drawing[] and was able to paint her room, demonstrating that she retains some ability to maintain concentration and persistence." AR 31. He also cited and described the "prior administrative findings," which "indicated that [Campbell] can understand, remember, and

complete simple instructions, make work-related decisions, concentrate for extended periods, sustain ordinary work routine, interact appropriately with others, and respond appropriately to changes in the workplace." AR 32; *see Tischler v. Kijakazi*, 2021 WL 5832843, at *3 (N.D. Tex. Dec. 9, 2021) (affirming an ALJ's decision that reflected due consideration of a medical opinion in the context of the entire record, including prior administrative findings). Those parts of the administrative record are consistent with the objective notes that the ALJ found significant.

As in most cases, the evidence did not all point in one direction. The ALJ acknowledged evidence, including Campbell's own testimony, that would tend to support a finding of disability. That was proper, as an "ALJ must consider all the record evidence and cannot 'pick and choose' only the evidence that supports his position." *Loza v. Apfel*, 219 F.3d 378, 393 (5th Cir. 2000). And for three reasons, the existence of some evidence favorable to Campbell does not undermine the ALJ's conclusion. First, the ALJ explained that the pages of the record reflecting Campbell's "statements about the intensity, persistence, and limiting effects of her symptoms . . . are inconsistent because the objective mental status examinations do not support [her] level of limitation." Second, the objective notes in the medical records are largely consistent with one another, reflecting that Campbell regularly appeared for appointments in a condition significantly better than the subjective components of the records and her own testimony would suggest. And third, the ALJ properly accounted for the inconsistencies in the evidence arising from Campbell's testimony by imposing, in his determination of residual functional capacity, "additional social limitations and limitations from working around hazards." AR 32; *see* AR 30 (residual functional capacity finding).

In her brief to this court, Campbell points to records of her hospitalization, "one month after [her] alleged onset date," for "'psychosis, suicidal ideation, self-injurious behavior and decline in functioning'" as part of the "ample support for the limitations assessed by . . . [Avina]." Campbell Br. 10 (citing AR 269). A review of those records reveals, however, not only that Campbell was diagnosed with bipolar disorder, anxiety disorder, and cannabis abuse, but also that she "improved over the course of hospitalization"; that her "[i]nsight into her illness" and "mentation

10

improved"; that both her "[p]sychosis" and "[s]uicidal ideation" "resolved"; that she exhibited "[n]o more self-injurious behavior"; that "she had returned to her baseline level of functioning"; and that, by the time of her discharge from the hospital, she was "awake, alert, oriented to time, person and place, calm, and cooperative with good eye contact" and exhibited a "euthymic mood, congruent affect, normal speech, [and] linear thought process." AR 269–70. The same records reflect that Campbell "denied suicidal or homicidal ideation, . . . hallucinations, [and] delusions" and that her memory, concentration, insight, and judgment were all "fair." AR 270.

Those records are more consistent with the objective notes that the ALJ relied on than they are with Avina's letters and Campbell's testimony. That is enough to support affirmance. *See Mileto v. Kijakazi*, No. 20-CV-01866-KMT, 2021 WL 9848902, at *3, *9 (D. Colo. Sept. 21, 2021) (affirming an ALJ's decision denying a disability claim that was based, in part, on the ALJ's determination that the claimant's "testimony regarding the intensity, persistence, and limiting effects of her conditions was not entirely consistent with the medical evidence and other evidence in the record" (quotation marks omitted)), *aff'd sub nom. Mileto v. Comm'r, SSA*, No. 21-1403, 2022 WL 17883809 (10th Cir. Dec. 23, 2022); *accord, e.g.*, *Rachel M. W. v. O'Malley*, No. 22-CV-557-MTS, 2024 WL 1008566, at *7, *9 (N.D. Okla. Mar. 8, 2024); *Bryant v. Comm'r of Soc. Sec.*, No. 1:22-CV-00115-SKL, 2023 WL 3435461, at *6 n.3, *8 (E.D. Tenn. May 12, 2023); *Amanda E. v. Kijakazi*, No. 2:21-CV-00090-MG-JPH, 2022 WL 4462431, at *11, *12 (S.D. Ind. Sept. 23, 2022).

In addition to addressing the primary factors of supportability and consistency, the ALJ also accounted for the remaining, less important factors under the applicable regulations. He acknowledged Avina's credentials and found her opinion "persuasive to the extent that [her] examining relationship with [Campbell], and her familiarity with [Campbell's] history and reported symptoms provide some basis of support for [her] opinion." AR 32. But he pointed, again, to the objective notes that Avina did not acknowledge and that contradicted both her opinion and Campbell's self-reporting of her abilities. He did not need to do more. *See* 20 C.F.R. § 404.1520c(b)(2) (providing that ALJs have no obligation to explain how they considered the final

11

three § 1520c(c) factors); *Wesley E. P. v. Comm'r of Soc. Sec.*, No. 2:21CV585, 2022 WL 19229022, at *14 (E.D. Va. Aug. 26, 2022) (explaining that an ALJ "need not repeat pertinent findings multiple times throughout a ruling for the purpose of supporting individual conclusions"), *report and recommendation adopted*, No. 2:21CV585, 2023 WL 2602506 (E.D. Va. Mar. 22, 2023).

The ALJ also stated that Campbell testified at the hearing to her belief that "she could work a full-time job that did not require her to work around people." The court does not find support in the hearing transcript for that part of the ALJ's decision. When asked whether she thought she could handle a simple, but five-day-a-week, job that required her to "work[] with things, not people," Campbell stated:

> I don't think I would be able to do that at this point. The reason is because, in any given week, I have generally two bad days, one of those good days I mentioned. And then the other days are somewhere in between. And so, showing up five days a week would—is just not something that I think I would be able to do at this point.

Although the ALJ also mentioned Campbell's desire to volunteer at a kennel where a friend worked, Campbell testified at the hearing that she never actually did that, explaining that she had "not gotten around to that volunteering. That was just a goal."

The lack of support in the hearing transcript for those assertions by the ALJ, however, does not change the outcome. Like the prior administrative findings it cites, the ALJ's decision acknowledged that the evidence relevant to Campbell's ability to work was mixed—and that Campbell expressed subjective beliefs about the extent of her impairment that, as one would expect, aligned with her request for benefits. But the objective evidence told a different story, and the ALJ's determination of residual functional capacity recognized the limits of Campbell's vocational abilities. In any event, and as already noted, Campbell faults the ALJ only for purportedly "fail[ing] to properly evaluate the opinion evidence in accordance with the new regulations." Campbell Br. 1.

That charge is misplaced here. The ALJ expressly and adequately addressed the two most important factors under the applicable regulations, explaining why they supported his decision. He

at least impliedly addressed the remaining, less important, factors. To the extent that one or more of those remaining factors arguably supported a different outcome, they could not outweigh the primary considerations of supportability and consistency.

### V.  CONCLUSION

The Commissioner's decision is **AFFIRMED**.

So **ORDERED** and **SIGNED** this 10th day of January, 2025.

_____
Bill Davis
United States Magistrate Judge